RECEIVED
IN LAKE CHARLES, LA

AUG 1 7 2011
*PMF*
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LARRY TOLLIVER** | : | **DOCKET NO. 2:09 CV313** |
| **VS.** | : | **JUDGE MINALDI** |
| **U-HAUL COMPANY OF TEXAS** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM ORDER

Before the Court are three motions: (1) a Motion in Limine to Limit Lay Opinion Testimony and to Exclude Hearsay Statements of Health Care Providers, filed by the defendant, U-Haul Company of Texas ("U-Haul") [Doc. 89]; (2) a Motion in Limine to Exclude Evidence Not Properly Disclosed Prior to Trial, filed by U-Haul [Doc. 90]; and (3) a Consolidated Motion in Limine, filed by the plaintiff, Larry Tolliver. U-Haul filed an Opposition to Mr. Tolliver's motion [Doc. 100], and Mr. Tolliver filed an Opposition to U-Haul's motion requesting the exclusion evidence not properly disclosed prior to trial, only. [Doc. 107].

U-Haul filed a Response [Doc. 112] to the Plaintiff's Consolidated Motions in Limine. U-Haul also filed a Reply [Doc. 127] in support of the Motion to Exclude Evidence [Doc. 90] not properly disclosed prior to trial. The plaintiff filed a Surreply [Doc. 135].

## BACKGROUND

In this lawsuit, Mr. Tolliver seeks compensation for damages allegedly sustained on March 9, 2008. On that day, Mr. Tolliver was traveling on a highway with a U-Haul trailer attached to his vehicle by means of an improvised Towing Starter Kit. The kit typically consists of a ballmount along with a pin and clip to fasten the trailer to the female receiver hitch on Mr. Tolliver's vehicle. But, because the pin and clip were missing from the kit, the U-Haul employee

1

who installed the kit on Mr. Tolliver's vehicle used an improvised fastening method. While Mr. Tolliver was traveling on the highway, the ballmount separated from the receiver hitch, leaving only the safety chains connecting the trailer to the vehicle. Eventually, Mr. Tolliver was able to bring his vehicle to a stop, but in doing so, the belongings loaded inside the vehicle slid forward and struck him in the back of the head. [R. Doc. 107]. Days after the accident, Mr. Tolliver sought treatment for his alleged injuries. U-Haul admits that it negligently installed the towing kit. [R. Doc. 89]. Therefore, the only issue for trial is causation and damages. [R. Doc. 89].

## LAW & ANALYSIS

### (1) Motion in Limine to Exclude Evidence Not Properly Disclosed Prior to Trial

Presently, Mr. Tolliver intends to call two doctors at trial: Dr. George Williams and Dr. John Cobb. [R. Doc. 107-1, Ex. 1]. Mr. Tolliver describes these doctors as his treating physicians, [R. Doc. 107], though he sought treatment from these doctors through a referral from his attorney. [R. Doc. 90-3, Ex. C, Dep. of Larry Tolliver, 158:20-24]. U-Haul objects to their testimony because Mr. Tolliver failed to comply with this Court's Scheduling Order for disclosure of expert witnesses and expert reports. However, U-Haul does not seek to categorically bar their testimony. Instead, it intends to prevent these witnesses from offering any testimony beyond the confines of their role as Mr. Tolliver's orthopedic surgeon, and specifically seeks to exclude any causation opinions. [R. Doc. 90].

Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure provides:

> (A) In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

As a preliminary matter, treating physicians often testify as experts under Rule 26(a)(2)(A). If they provide expert testimony, their identity must be disclosed. This disclosure

2

must be made either at the time directed by this Court, by stipulation, or, if there is no order or stipulation, at least 90 days before trial. Fed. R. Civ. P. 26(a)(2)(D)(i). Pursuant to the Scheduling Order governing this case, Mr. Tolliver was required to furnish the names of those individuals providing expert testimony no later than 75 days before trial. [R. Doc. 63-1]. Mr. Tolliver disclosed Dr. Williams and Dr. Cobbs names nine days late. [R. Doc. 90-1, Ex. A].

U-Haul also contends that Mr. Tolliver was required to furnish an expert report for Dr. Williams and Dr. Cobb, and Mr. Tolliver's failure to do so should result in limiting the testimony of these doctors. [R. Doc. 90]. The disclosure of expert reports is governed by Rule 26(a)(2)(B), which provides:

> (B) Witnesses Who Must Provide a Written Report. *Unless otherwise stipulated or ordered by the court*, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. . . .

Mr. Tolliver contends that he was not required to furnish a report for these witnesses because they are his treating physicians, and thus they were not "retained or specially employed to provide expert testimony in the case." Further, Mr. Tolliver claims that their duties as his treating physicians do not "regularly involve giving expert testimony." Indeed, the 1993 Advisory Committee notes to Rule 26(a)(2)(B), suggest that a treating physician is distinguishable from a Rule 26(a)(2)(B) expert:

> The requirement of a written report in paragraph (2)(B) . . . applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report. *By local rule, order, or written stipulation, the requirement of a written report may be waived for particular experts or imposed upon additional persons who will provide opinions under Rule 702.*

3

*See also Hamburger v. State Farm Mutual Auto. Ins. Co.*, 361 F.3d 875 (5th Cir. 2004) ("A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report."). Thus, Mr. Tolliver contends that an expert report was not required for Dr. Williams and Dr. Cobb. [R. Doc. 107]. This Court disagrees for three reasons.

First, when an attorney refers a physician to a client, the physician crosses the line from a treating physician into the realm of a specially retained expert whose report must be provided. *See Hall v. Sykes*, 164 F.R.D. 46, 49 (E.D. Va. 1995). As the court reasoned in *Hall*, "[s]uch a reference by an attorney to a physician for treatment raises the appearance that the physician was specially employed to provide expert opinion." *Id.* Here, Mr. Tolliver's attorney referred him to both Dr. Williams and Dr. Cobb. Accordingly, they are specially employed to provide expert opinions, and an expert report is required.

Second, when a physician's opinions do not encompass merely the ordinary care of a patient, such as opinions regarding his medical condition, diagnosis, or prognosis, but extend to conclusions as to the ultimate cause of the patient's condition, an expert report is required. *See Zarecki v. National R.R. Passenger Corp.*, 914 F. Supp. 1566, 1573 (N.D. Ill. 1996). Here, Dr. Williams and Dr. Cobb intend to testify as to the cause of Mr. Tolliver's injuries, and the scope of this testimony extends beyond that of a treating physician. Thus, an expert report is required for those opinions.

Finally and most importantly, both Rule 26(a)(2)(B) and the advisory committee notes indicate, as highlighted in the italicized portions above, that the expert report rule contained within the Federal Rules of Civil Procedure is merely the default rule. As such, it is subject to modification by court order. A court order, therefore, will supersede Rule 26(a)(2)(B)'s scope. Here, this Court's Scheduling Order modified the default rule. As provided in Section II(C) of

4

the Scheduling Order, Mr. Tolliver was required to furnish to U-Haul "the names and written reports of *any physician or other expert witness* [Mr. Tolliver] intends to call no later than 75 days before trial." [Doc. 63-1] (emphasis added).  Accordingly, Mr. Tolliver was required to provide written reports from his physicians. It is unclear whether he has actually provided an expert report, as no expert report has been provided to this Court. Even if he has, there is no doubt that this disclosure was untimely. This Court assumes he has not.

In sum, Mr. Tolliver's expert disclosure was untimely. Furthermore, Mr. Tolliver was required to provide a written report for his experts. Because U-Haul does not contend that each physician is required to provide a complete expert report, and only seeks exclusion of testimony that is beyond the scope of the doctors' treatment, this Court will interpret the scheduling order consistent with U-Haul's motion. Thus, only testimony beyond the scope of the treatment is purportedly inadmissible.

Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or harmless." In other words, exclusion is automatic unless substantially justified or harmless. *See* 8A Wright & Miller, Federal Practice & Procedure § 2289.1 at 704 (3d ed. 2003).

In determining whether exclusion as a sanction is appropriate, courts in this circuit examine four factors: "(1) the explanation, if any, for the party's failure to comply with the discovery order; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witnesses' testimony." *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 379-81 (5th Cir. 1996).

Other than to simply say that there was some "misunderstanding," Mr. Tolliver provides little justification for the delay in disclosing the identity of Dr. Williams and Dr. Cobb. [R. Doc. 90-1, Ex. A]. Nevertheless, the oversight appears to be due to inadvertence, not some dilatory tactic. In contrast to a number of cases in which the Fifth Circuit has upheld a district court's sanction, *see, e.g., Barrett*, 95 F.3d at 380-81, there is no evidence here that the failure to produce the names of Mr. Tolliver's experts was designed to prejudice the opposing party and violate the scheduling order. Still, this neglect is not completely excusable, as inadvertence alone is insufficient as an explanation. *See Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883-84 (5th Cir. 2004).

Moreover, if Mr. Tolliver intends to elicit testimony at trial that is beyond the scope of Dr. Williams and Dr. Cobb's duties as a treating physician, the failure to produce a written report appears willful. In his June 17, 2011 letter, Mr. Tolliver's counsel indicated that he was aware of the written report requirement, [R. Doc. 90-1, Ex. A], but to this date, he has failed to furnish a written report. *See* Fed. R. Civ. P. 26(a)(2)(B) (describing the requirements of a written report). Accordingly, this factor favors U-Haul.

Regarding the second factor, to the extent that a complete written report has not been provided, there is potential prejudice to U-Haul. As the Fifth Circuit has reasoned, an expert's report must be "detailed and complete" to help "avoid the disclosure of 'sketchy and vague' expert information." *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir. 1996). Any potential prejudice could be mitigated through deposing Dr. Williams and Dr. Cobb. But because the disclosure was late, it prejudices U-Haul by preventing them from effectively cross examining and tailoring its experts' reports to the opinions of Dr. Williams and Dr. Cobb. Thus, this factor slightly weighs in favor of U-Haul.

The third factor, whether a continuance will help cure the prejudice, presents a unique issue. Mr. Tolliver requested a continuance in this case, but Magistrate Judge Kay denied the continuance. According to the minutes from that proceeding, Mr. Tolliver's counsel requested a continuance to give Mr. Tolliver additional time to obtain his requested surgery. He further indicated that Mr. Tolliver could not afford the surgery, and whether the surgery could be performed appeared uncertain. While he could have, and likely should have, indicated that a continuance is necessary to cure a potential discovery defect, he did not make such a request. [Doc. 117]. Further, because the trial date is so close, it is doubtful that a continuance would cure the prejudice. Thus, this factor weighs in favor or U-Haul.

The fourth factor weighs in favor of Mr. Tolliver and against exclusion. The focal point of this case is causation. But "the importance of this testimony underscores how critical it was for [Mr. Tolliver] to have timely designated" Dr. Williams and Dr. Cobb as experts and provided written reports for those experts. *Hamburger*, 361 F.3d at 883. Because "[t]he importance of proposed testimony cannot 'singularly override the enforcement of local rules and scheduling orders,'" U-Haul's Motion in Limine will be granted. *Id.*

## (2) Motion in Limine to Limit Lay Opinion Testimony and to Exclude Hearsay Statements of Healthcare Providers

Next, U-Haul requests an order from this Court preventing Mr. Tolliver from introducing improper lay opinion and hearsay from medical providers. [R. Doc. 89]. U-Haul objects to no specific testimony; it seeks a broad order enforcing the Federal Rules of Evidence. Whether individual statements are admissible will depend on the trial testimony; thus, U-Haul's Motion is denied as premature.

## (3) Plaintiff's Consolidated Motion in Limine

In Mr. Tolliver's consolidated Motion in Limine, he raises six objections. First, he objects to the admission of his tax returns and Social Security Administration records. Since Mr. Tolliver has dismissed his lost wage claim, this evidence should be excluded as irrelevant. It has no bearing on the issue of causation or damages. [R. Doc. 100].

Next, Mr. Tolliver objects to the admission of Mr. Tolliver's employment records. [R. Doc. 100]. Only the post-accident employment records are relevant and admissible. These employment records are relevant for two purposes: first, in those records, Mr. Tolliver admits that he currently suffers from no health related issues and, second, his work records show that he was able to engage in labor intensive work. [R. Doc. 100, Ex. E]. This is relevant and admissible substantive evidence, and Mr. Tolliver's request for exclusion is denied.

Mr. Tolliver's third objection is directed at surveillance evidence, which shows Mr. Tolliver playing two rounds of golf after the accident. Mr. Tolliver contends that this evidence is irrelevant for impeachment purposes because he admitted to playing golf after the accident. [R. Doc. 100]. But he ignores the substantive value of the evidence. *See Chiasson v. Zapata Gulf Marine Corp.*, 988 F.3d 513 (5th Cir. 1993). The surveillance video tends to prove that Mr. Tolliver's injuries are not as significant as he claims, and that he is able to function normally. *Id.* Further, while the surveillance video is prejudicial, it will not amount to unfair prejudice.  Thus, Mr. Tolliver's objection to the surveillance evidence will be denied.

Next, Mr. Tolliver objects to the proposed testimony of James Hall, Gary Littleton, and Erica Littleton. [R. Doc. 100]. Mr. Hall took the surveillance video described above, and Mr. Littleton, the owner of the company that provided the surveillance, arranged the logistics of the surveillance video. Likewise, Ms. Littleton works at the L'Auberge du Lac golf course, where the surveillance video was taken, and according to U-Haul has intimate familiarity with Mr.

Tolliver's golfing habits. This allegedly includes 17 reserved tee times from April 8, 2011 through July 1, 2011. [R. Doc. 112]. Their testimony is admissible to both lay a foundation for potential exhibits (i.e., the surveillance evidence and records of tee times) and to provide substantive evidence of Mr. Tolliver's actions after the accident, specifically playing golf, that tend to show he has not suffered significant injuries. *See id.*

In Mr. Tolliver's fifth objection, he seeks to exclude evidence of his 1997 conviction for drug smuggling. [R. Doc. 100]. Rule 609(a)(1) authorizes impeachment by convictions from crimes that do not involve dishonesty or false statement if three conditions are met. First, the witness must have been convicted of a crime that is punishable by death or imprisonment in excess of one year. Second, no more than ten years must have elapsed from the later of either (1) the date of conviction or (2) the date of release from confinement. Third, the conviction must satisfy the Rule 403 balancing test (i.e., its probative value must not be substantially outweighed by the risk of unfair prejudice).

In this case, Mr. Tolliver's conviction is admissible for impeachment purposes. His conviction was punishable by imprisonment in excess of one year; he was released from confinement less than 10 years ago; and with a proper limiting instruction, the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice. [R. Doc. 112, Ex. F & Ex. G]. Accordingly, Mr. Tolliver's request will be denied.

Finally, Mr. Tolliver seeks to exclude evidence of his medical treatment while in prison. [R. Doc. 100]. The prison records indicate that Mr. Tolliver complained of low back pain on at least two occasions. Furthermore, in Mr. Tolliver's deposition he indicated that he received no medical treatment while in prison. Substantively, it shows that Mr. Tolliver's back problems arose from a prior injury, rather than the accident that forms the basis of this lawsuit. The records

9

are also relevant to impeach Mr. Tolliver, who indicated that he had received no medical treatment while in prison, when in fact he did. *See Chiasson*, 988 F.2d at 515-517 (describing the both impeachment and substantive evidence). Accordingly, it is

ORDERED that U-Haul's Motion in Limine [Doc. 90] to Exclude Evidence Not Properly Disclosed Prior to Trial is GRANTED;

IT IS FURTHER ORDERED that U-Haul's Motion in Limine to Exclude Lay Opinion Testimony and Hearsay Statements of Health Care Providers [Doc. 89] is DENIED;

IT IS FURTHER ORDERED that Mr. Tolliver's Consolidated Motion in Limine [Doc. 100] is GRANTED in part and DENIED in part.

Lake Charles, Louisiana, this _15_ day of ___August___ 2011.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE